# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHLEEN M. BROWN,
     Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-151

Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Kathleen Brown brings this action pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security

(Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and

supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of

Errors (Doc. 13), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply

(Doc. 17).

## I. Procedural Background

Plaintiff originally filed for DIB in May 2009, alleging disability beginning January 5,

2005. She subsequently amended the alleged onset date to September 22, 2008. (Tr. 202).

Plaintiff's application was denied by administrative law judge (ALJ) Christopher McNeil on July

26, 2011 (Tr. 199-215) and the Appeals Council denied review of this decision in February 2013.

(Tr. 224-28). Plaintiff filed her subsequent applications for DIB and SSI in March 2013,

alleging disability since September 15, 2008 due to depression, anxiety, migraines, glaucoma,

rotator cuff disorder-right shoulder, bipolar disorder, a brain aneurysm, COPD, diabetes type 2,

and restless leg syndrome. After initial administrative denials of her claim, plaintiff, through

counsel, requested a hearing. Plaintiff and a vocational expert (VE) testified at a hearing held on

August 6, 2015 before ALJ Steven Collins. Plaintiff amended her alleged onset date at the

hearing to July 14, 2011. (Tr. 14, 41-44). On December 15, 2015, the ALJ issued a decision

denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals

Council was denied, making the decision of the ALJ the final administrative decision of the

Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A)

(DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the

work previously performed or in any other substantial gainful employment that exists in the

national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

2

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond v. Comm'r of Social Security*, 126 F.3d 837, 841 (6th Cir. 1997); *Dennard v. Sec'y of HHS,* 907 F.2d 598 (6th Cir. 1990). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond,* 126 F.3d at 842; *Dennard,* 907 F.2d at 600. Absent evidence that a claimant's condition has changed, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding. *Drummond*, 126 F.3d at 842; *Dennard,* 907 F.2d at 600. The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

3

When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

Acquiescence Ruling (AR) 98-4(6), 1998 WL 274052 (June 1, 1998); AR 98-3(6), 1998 WL 274051 (June 1, 1998). *See also Perry, for G.D. v. Comm'r of Soc. Sec.,* 501 F. App'x 425, 427 (6th Cir. 2012) (quoting AR 98-4(6)) ("An ALJ adjudicating a subsequent disability claim 'arising under the same title of the [Social Security] Act as the prior claim' must adopt the original ALJ's final decision unless 'new and material evidence' shows a change in [the] claimant's condition.").

## B. The Administrative Law Judge's Findings

In rendering his decision on plaintiff's subsequent DIB and SSI applications, ALJ Collins recognized he was bound under principles of administrative res judicata by ALJ McNeil's prior findings, absent new and material evidence or changed circumstances pertaining to plaintiff's residual functional capacity (RFC). (Tr. 24, citing AR 98-3(6), AR 98-4(6)). ALJ Collins found no evidence of any change in plaintiff's mental impairments and no change in her physical condition since July 26, 2011, the date of the prior ALJ decision, except that plaintiff now used an inhaler for early emphysema. (Tr. 24). He added a restriction limiting exposure to pulmonary irritants in the RFC finding to account for plaintiff's recent diagnosis of early emphysema. (*Id.*). The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The [plaintiff] has not engaged in substantial gainful activity since September 15, 2008, the initial alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: right shoulder impingement with history of arthroscopic subacromial decompression, ligament release and distal clavicle excision; emphysema, left hip chronic bursitis, degenerative cervical disc disease, borderline intellectual functioning, a bipolar disorder, schizoaffective features, and an anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the right upper extremity can do no more than occasional overhead reaching with less than 5 pounds; balance frequently, but no more than occasional stooping, kneeling, crawling, and climbing of ramps or stairs; but no climbing of ladders, ropes or scaffolds; and no more than occasional exposure to extreme heat, cold, fumes, dusts, gasses, odors, and chemicals. The claimant can understand and remember simple instructions and sustain attention to complete simple, repetitive tasks where production quotas are not critical; can tolerate interaction with coworkers and supervisors involving limited interpersonal demands in an object focus nonpublic work setting and can adapt to routine changes in a simple work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1962 and was just under 50 years of age, which is defined as an individual closely approaching advanced age, as of the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

---

[1]Plaintiff's past relevant work was as a bag machine operator/machine feeder tender, a heavy unskilled position which plaintiff performed at the medium exertion level. (Tr. 24).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not she has transferable job skills to other light jobs (See SSR 82-41 and 20 CFR Part 404 Subpart P. Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11 The [plaintiff] has not been under a disability, as defined in the Social Security Act, from September 15, 2008, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-25).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co.*

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light occupations such as assembler, inspector quality assurance worker, and packer, which after taking into account a 10% reduction for the right upper extremity reaching limitations number approximately 815,000 jobs nationally. (Tr. 25).

*v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978). Where there has been a prior disability determination, the proper inquiry on judicial review is "whether 'new and additional evidence or changed circumstances provide a basis for a different finding of the claimant's residual functional capacity.'" *Rudd v. Comm'r of Soc. Sec.,* 531 F. App'x 719, 725-26 (6th Cir. 2013) (quoting AR 98-(6)).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-46 (6th Cir. 2004) (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff argues that that ALJ erred by: (1) issuing a credibility finding that is not supported by substantial evidence; (2) requiring plaintiff to provide "verifiable objective evidence" in support of her testimony; (3) equating plaintiff's activities of daily living and

household chores to an ability to perform substantial gainful activity on a sustained basis; (4) failing to find that schizophrenia was a severe impairment; (5) failing to use the required technique set forth in 20 C.F.R. § 404.1520a for analyzing the severity of plaintiff's mental impairments; and (6) failing to consider testimony plaintiff provided regarding the side effects of her medications and rejecting other unspecified evidence that shows the ALJ's RFC finding does not accurately reflect plaintiff's limitations.[3]  (Doc. 13).  Plaintiff's first, second, third and sixth assignments of error all present challenges to the ALJ's credibility finding.  The Court will therefore combine these allegations of error and consider them together.  The Court will also consider plaintiff's assignments of error in a different sequence than plaintiff has presented them in the Statement of Errors.

### 1. The ALJ did not fail to properly analyze plaintiff's mental limitations.

Plaintiff alleges as her fifth assignment of error that the ALJ failed to properly evaluate her severe mental impairments.  (Doc. 13 at 15-16).  Plaintiff notes that the ALJ found she suffers from borderline intellectual functioning, a bipolar disorder, schizoaffective features, and an anxiety disorder.  (Tr. 16).  Plaintiff states that the ALJ was required to evaluate on a four-point scale how these mental impairments impacted four functional areas: 1) activities of daily

---

[3] Plaintiff makes a conclusory allegation in her Statement of Errors that the ALJ did not properly formulate the RFC because the ALJ "refused to consider . . . selected opinions of the consultative examiner and treating sources. . . ." (Doc. 13 at 19).  Plaintiff has waived this argument by alluding to it in a cursory manner and failing to develop the argument factually or legally. *Kuhn v. Washtenaw County,* 709 F.3d 612, 624 (6th Cir. 2013) (stating that the Sixth Circuit "has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citing *Caudill v. Hollan,* 431 F.3d 900, 915 n. 13 (6th Cir. 2005) (citing decisions that stand for these two related propositions)). *See also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

living, 2) social functioning, 3) concentration, persistence or pace, and 4) episodes of decompensation. (Doc. 13 at 16, citing 20 C.F.R. § 404.1520a(c)(3)-(4)).[4] Plaintiff further asserts that the ALJ was required to incorporate the results of the evaluation into his findings and conclusions. (*Id.*, citing 20 C.F.R. § 404.1520a(e)). Plaintiff alleges that the ALJ failed to consider the four functional areas and make a specific finding as to the degree of limitation in each area as required by the regulations. In response, the Commissioner contends that the ALJ explicitly made the required findings and fully complied with the regulations. (Doc. 14 at 7).

In his written decision, the ALJ found that: "In activities of daily living, the claimant has mild restriction"; "In social functioning, the claimant has moderate difficulties"; "With regard to concentration, persistence or pace, the claimant has moderate difficulties"; and "As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration." (Tr. 19). The ALJ incorporated the pertinent findings and conclusions into his written decision and adequately explained the reasons for his findings. The ALJ therefore properly assessed the degree of impairment in plaintiff's mental functioning in compliance with the regulations. *See* 20 C.F.R. §§ 404.1520a, 416.920a.

Plaintiff's fifth assignment of error should be overruled.

---

[4] Section 404.1520a has been modified twice since the date of the ALJ hearing. The regulation in effect on the date of the hearing provided that in assessing a claimant's mental functional limitations for purposes of the Listing, the degree of functional limitation will be assessed in the "four broad functional areas" identified above using a five-point scale to rate the degree of limitation in the first three areas ("None, mild, moderate, marked and extreme") and a four-point scale to rate the degree of limitation in the fourth category ("None, one or two, three, four or more"). 20 C.F.R. § 404.1520a(c)(3)(4); *see also* 20 C.F.R. § 416.920a(c)(3)(4). The ALJ's written decision must include "a specific finding as to the degree of limitations in each of the functional areas. . . ." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

**2. The ALJ did not err by failing to find schizophrenia was a severe impairment.**

Plaintiff alleges as her fourth assignment of error that the ALJ erred by rejecting a diagnosis of schizophrenia she was given on the grounds it was (1) based on plaintiff's self-serving statement, and (2) inconsistent with plaintiff's treatment history, which was focused on plaintiff's mood and anxiety issues (Tr. 17). (Doc. 13 at 14-15, citing Tr. 1711). The Commissioner argues in response that the ALJ did not err by omitting schizophrenia as a severe impairment because the record does not include mental health treatment records in which a provider made a diagnosis of schizophrenia, and plaintiff has not produced evidence to show she suffers from debilitating limitations caused by schizophrenia. (Doc. 14 at 8-9). The Commissioner argues that if the ALJ's finding was in error, the error was harmless because the ALJ found that plaintiff suffered from other severe impairments, including schizoaffective features, at step two of the sequential evaluation process and took all of her impairments into account at the remaining steps of the process.

An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." Social Security Ruling 85-28, 1985 WL 56856, at *3 (1985).[5] The claimant's burden of establishing a "severe" impairment during the second step of the disability

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.,* 628 F.3d 269, 272 n. 1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)). The Sixth Circuit has refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations but has assumed that they are. *Id.* (citing *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 549 (6th Cir. 2004)).

determination process is a "*de minimis* hurdle." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

The ALJ found that the following mental impairments were "severe impairments" at step two of the sequential evaluation process: "borderline intellectual functioning, a bipolar disorder, schizoaffective features, and an anxiety disorder." (Tr. 16). The ALJ acknowledged that plaintiff's primary care provider, Dr. Peeden, "did mention" a diagnosis of schizophrenia in her treatment notes. (Tr. 17, citing Tr. 1711). However, the ALJ declined to find that schizophrenia was a severe impairment because it was based largely on plaintiff's "self-serving statement about her mental disability," and it was inconsistent with plaintiff's mental health treatment history, which was focused on mood and anxiety issues as opposed to any type of psychotic disorder. (*Id.*).

Plaintiff has not shown that the ALJ committed any error at step two by failing to find schizophrenia was a severe impairment. The record supports the ALJ's finding that the diagnosis of schizophrenia included in the record was based in large part on plaintiff's self-report to her primary care physician, Dr. Peeden. (Tr. 1171). Dr. Peeden reported on June 15, 2010 that plaintiff came in "to have forms complete[d] for Ohio Job and Family Services . . . Patient has gone to see Dr[.] Wu[6] since last visit and diagnosed [sic] with schizophrenia. She was started on

---

[6] The prior ALJ decision of July 26, 2011, states that on June 12, 2010, Dr. Geraldine Wu, M.D., examined plaintiff on referral from a social worker at Lifepoint Solutions and Dr. Wu assessed "a major depressive disorder, with psychosis [the claimant again reported visual and auditory hallucinations]. . . ." (Tr. 208).

risperdal. She reports visual and auditory hallucinations. There is a man with a black cape that has been following her for several [years]." (Tr. 897). When plaintiff again visited Dr. Peeden to have a form completed for disability purposes on May 21, 2014, Dr. Peeden noted that plaintiff "is [on] disability due to diagnosis of schizophrenia and bipolar disorder. . . ." (Tr. 1711). In her notes, Dr. Peeden listed schizophrenia as one of two diagnoses. (*Id.*). These records suggest that the diagnosis of schizophrenia included in Dr. Peeden's records was based on plaintiff's representation that she had previously been diagnosed with schizophrenia and that Dr. Peeden did not make the diagnosis based on her own medical judgment.

Plaintiff nonetheless alleges the ALJ erred by rejecting a schizophrenia diagnosis on these grounds because psychiatry is dependent on an individual's subjective presentations. (Doc. 13 at 15, citing *Winning v. Commr. of Soc. Sec.*, 661 F. Supp. 2d 807, 821 (N.D. Ohio 2009) ("psychology and psychiatry are, by definition, dependent on subjective presentations by the patient.")). However, there is a difference between a plaintiff's subjective complaints and symptoms and a medical diagnosis that a mental health provider makes based on consideration of these factors. *See, e.g., Byrne v. Astrue*, No. 3:11-cv-00353, 2012 WL 5988639, at *9 (S.D. Ohio Nov. 29, 2012) (Report and Recommendation) ("the ALJ considered all of Plaintiff's alleged symptoms, as well as the different diagnoses of the various medical source opinions who considered Plaintiff's symptoms"), *adopted,* 2013 WL 26124 (S.D. Ohio Jan. 2, 2013). An ALJ is not obligated to accept a diagnosis of a mental impairment based on the individual's assertion that she has been given that diagnosis in the absence of any medical records that substantiate the individual's report. Thus, the ALJ did not err by failing to find plaintiff's schizophrenia was a

12

severe impairment on the ground the diagnosis in the record was based largely on her self-report that she had been diagnosed with the impairment.

Further, even if the ALJ erred by failing to include schizophrenia as a severe impairment, the error was harmless. An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). This rule is predicated on the notion that the ALJ "properly could consider the claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity." *Id.* In this case, the ALJ determined that plaintiff had several severe mental impairments, including schizoaffective features, and the ALJ continued to conduct a meaningful analysis of how plaintiff's severe impairments impacted plaintiff's mental functioning. (Tr. 16-20). The ALJ considered the impact of those symptoms in assessing whether plaintiff's mental limitations had changed since the prior ALJ decision. The ALJ concluded that the "longitudinal record does not suggest any deterioration" in plaintiff's overall mental condition since the prior ALJ decision. (Tr. 24). The ALJ found that because there had been no change in the severity of plaintiff's mental impairments, her mental restrictions were the same as those assessed by the prior ALJ. (*Id.*). The ALJ adopted these restrictions from the prior RFC finding to account for plaintiff's functional limitations resulting from her mental impairments:

> [Plaintiff] can understand and remember simple instructions and sustain attention
> to complete simple, repetitive tasks where production quotas are not critical; can

tolerate interaction with coworkers and supervisors involving limited
interpersonal demands in an object focus nonpublic work setting and can adapt to
routine changes in a simple work setting.

(Tr. 20). Plaintiff has not shown that even if the ALJ was bound to include schizophrenia as a
severe impairment, the disease imposed any additional functional limitations which the ALJ
failed to include in the RFC finding.

Thus, plaintiff has not shown that the ALJ erred by failing to find that schizophrenia was
a severe impairment or, if the ALJ did err, that the error was harmful. Plaintiff's fourth
assignment of error should be overruled.

### 3. The ALJ did not err in assessing plaintiff's credibility.

Plaintiff's first, second, third and sixth assignments of error relate to the ALJ's
credibility finding. (Doc. 13). Plaintiff alleges that the ALJ's credibility finding is not
supported by substantial evidence and does not comply with Social Security Ruling 96-7p.
Plaintiff contends that the ALJ relied on his "own intuition" to discount her credibility without
providing any explanation. (Doc. 13 at 8). Plaintiff also argues that the ALJ erroneously
required her to provide "verifiable objective evidence" in support of her testimony; equated her
activities of daily living and performance of household chores to an ability to perform
substantial gainful activity on a sustained basis; and failed to consider testimony plaintiff
provided regarding the side effects of her medications and rejected other unspecified evidence
that shows the ALJ's RFC finding does not accurately reflect plaintiff's limitations. Plaintiff
alleges that the ALJ failed to take into account two favorable factors: plaintiff's persistent
efforts to obtain relief for her symptoms as shown by the medical evidence and her "excellent"

14

work history. (*Id*.). Plaintiff contends that the ALJ's decision "cherry-picks" select portions of the record rather than considering the evidence as a whole. (*Id*. at 11). Plaintiff argues her testimony is not inconsistent with the substantial medical evidence of record and the ALJ erred by discounting it. (*Id*. at 7-14, 16-18).

The Commissioner responds that the record fully supports the ALJ's finding that plaintiff's complaints were not entirely credible and were inconsistent with the objective evidence in the record. (Doc. 14 at 11-16). The Commissioner argues that the ALJ reasonably considered the lack of supporting objective findings; the treatment records which showed that treatment improved plaintiff's mental health symptoms; inconsistencies in plaintiff's testimony; plaintiff's failure to pursue recommended treatment; and plaintiff's activities of daily living.

Title 20 C.F.R. §§ 404.1529, 416.929 and Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996)[7] describe a two-part process for assessing the credibility of an individual's statements about symptoms, including pain. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of

---

[7] Effective March 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *10, n. 5 (S.D. Ohio Jan. 31, 2017) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017) (Barrett, J.); *Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 405.1529(c), 416.929(c), SSR 96-7p. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

Upon review of the ALJ's complete credibility determination, the Court finds the ALJ's credibility finding is substantially supported by the evidence of record and is entitled to deference. The ALJ found that plaintiff's testimony was not entirely credible for reasons the ALJ thoroughly discussed in his written decision. (Tr. 20-24). The ALJ properly considered plaintiff's subjective statements as to her symptoms and functional limitations together with her daily activities, the objective medical evidence, and the medical opinions of record. *See Newman v. Colvin*, No. 1:15-cv-639, 2017 WL 685685, at *6-7 (S.D. Ohio Feb. 1, 2017) (Report & Recommendation) (holding that ALJ properly considered the requisite factors in making his credibility determination because he considered the plaintiff's subjective statements, objective medical evidence, the plaintiff's activities of daily living, and the record medical opinions), *adopted*, *Newman v. Comm'r of Soc. Sec.*, 2017 WL 680632 (S.D. Ohio Feb. 21, 2017).

16

First, the ALJ reasonably found that the treatment records disclosed that the objective medical findings were inconsistent with plaintiff's complaints of debilitating physical limitations. Although the record documents ongoing treatment for plaintiff's hip pain, imaging tests disclosed only mild hip findings. An MRI of plaintiff's left hip performed on January 10, 2014 showed "[s]light peritendinous edema lateral to the gluteus medius tendon insertion consistent with mild tendinopathy" and an "otherwise unremarkable examination." (Tr. 21, citing Tr. 1532). Plaintiff's treating orthopedist, Dr. Arnold Penix, M.D., reported that the MRI was consistent with "some abductor tendinitis." (Tr. 1440). The record also documents right shoulder impingement for which plaintiff underwent an arthroscopy and a subacromial debridement, ligament release, and excision of an osteophyte on June 6, 2013. (Tr. 17, citing 1167; *see* Tr. 1450-51). In October 2013, Dr. Penix reported the shoulder was doing well overall, although plaintiff would require further surgery for auxiliary skin abscesses. (Tr. 1440). Treatment records from Cincinnati Pain Management, where plaintiff treated from May until at least September 2015 (Tr. 2220-98), repeatedly noted normal shoulder findings, including full range of motion, full motor strength, and full functioning of the right upper extremity and shoulder. (Tr. 21, 22, citing Tr. 2230-31, 2242-43, 2258-59, 2282-83, 2295-96). In addition, the ALJ acknowledged that plaintiff complained on occasion of shortness of breath to her providers. (Tr. 17). However, the ALJ reasonably found that plaintiff's complaints of shortness of breath with only minimal effort were not supported by her pulmonary function test, which disclosed only mild emphysema, and her six-minute walking test, which was negative for oxygen desaturation. (Tr. 21; *see* Tr. 933-935). Finally, x-rays of the cervical spine taken in October 2012, after

17

plaintiff reported an onset of neck pain following a motor vehicle accident, showed stable and

mild degenerative disc disease at C5-C6 that was unchanged from prior tests results. (Tr. 21,

citing Tr. 1015).

Substantial evidence supports the ALJ's finding that the objective medical evidence also

was not consistent with plaintiff's complaints of a decline in mental functioning since the prior

ALJ decision. (Tr. 24). The ALJ specifically found there was no evidence in the medical record

documenting problems with plaintiff's memory or cognitive decline that would preclude her

from "remembering and completing simple, routine tasks as she had done in the past." (Tr. 21).

Plaintiff alleges this was error because in an April 2013 Mental Status Questionnaire, treating

psychiatrist Dr. Cheng reported that plaintiff had "short term memory problems." (Tr. 1089).

However, plaintiff does not point to any treatment records that substantiate this finding or

otherwise support her testimony as to memory problems and cognitive decline.

The ALJ also reasonably discounted plaintiff's allegations that her hallucinations

imposed debilitating limitations on the ground her self-reports of hallucinations were inconsistent

with the medical records. (Tr. 23-24, citing Tr. 1007). The ALJ noted that plaintiff reported that

since 2007 she has seen a "little man" who is always behind her and sometimes talks to her, but

the progress notes indicate that "the hallucinations responds [sic] to medication [] and she rarely

reports being distracted by her schizoaffective symptoms." (Tr. 23-24, citing Tr. 1808- plaintiff

reported on October 18, 2014, that her hallucinations "were returning" which she believed was

attributable to a decrease in her medications, "more specifically her lithium and Effexor.").

Plaintiff disputes the ALJ's finding that the hallucinations did not impose debilitating mental

limitations, citing several medical records where she reported hallucinations involving the "little man." (Doc. 17 at 6, citing Tr. 1106, 5/30/13- plaintiff reported to consultative examiner that she "always has a little man behind her that other people cannot see," she first began seeing him in 2007 when he touched her, and he often tries to shake her hand and talk to her; Tr. 1420, 12/27/13- plaintiff "claims she has a 'little man that follow[s] her and talks to her at times and spoke derogatory things and poor sleep as 'man' does not let her sleep long"; Tr. 1416, 2/5/14- plaintiff reported that "'Little man' continues to mumble to her though it is unintelligible. She is not distressed by this"; Tr. 1407, 4/21/14- sleep is difficult as her "'Little man' was going manic in her head," but she "denies feeling distressed re her atypical hallucination of a 'Little man' that she claims is always present" and she denied any other symptoms of psychosis; Tr. 1404, 5/7/14- plaintiff reported "seeing a little man standing on her shoulder"; Tr. 1397, 6/18/14- plaintiff reported "she wasn't bothered by 'the little man that stands behind her'"). These records appear to corroborate the ALJ's finding that according to her own reports, plaintiff's hallucinations rarely bothered her. The records thus support the ALJ's finding that plaintiff's symptoms were not so severe as to show deterioration in her mental functioning since the prior ALJ decision. The ALJ reasonably discounted plaintiff's credibility on this basis.

In addition to the lack of objective evidence to support plaintiff's allegations of debilitating physical and mental limitations, the ALJ reasonably relied on a number of other factors that he found were inconsistent with plaintiff's allegations of disabling impairments and pain to find plaintiff's complaints were not fully credible. These factors included inconsistencies between plaintiff's testimony and her self-reports of symptoms. For instance, in October 2013,

plaintiff reported to Dr. Penix that her left hip was aggravated due to "doing a lot of walking on some uneven ground." (Tr. 1440). In October 2014, she reported to the physical therapist at Mercy Health upon discharge that her pain was 0/10 and she had no pain during the prior week. (Tr. 2004). Plaintiff notes that she reported a recurrence of right shoulder pain to Cincinnati Pain Management nearly one year later in September 2015, but there is no indication in the record as to the severity of the pain and plaintiff did not report it as one of her chief complaints at that time. (Tr. 2220-27).

In addition, the ALJ reasonably discounted plaintiff's credibility because he found her daily activities were not consistent with her complaints. The ALJ found that although plaintiff's daily activities are fairly limited, she must carry groceries, including dog food, from her car and up one flight of stairs to her apartment, which suggests she is able to carry and lift much more than she alleged. (Tr. 22; *see* Tr. 74- plaintiff testified that she can lift a gallon of milk but she uses both hands). Plaintiff alleges the ALJ's finding was in error because her daily activities are not indicative of an ability to perform sustained competitive employment. The Court does not agree that the ALJ erred in this regard. While an individual's ability to do household chores is not direct evidence of an ability to perform gainful work, "[a]n ALJ may . . . consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Keeton v. Commr. of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014); *Walters*, 127 F.3d at 532. *See also Blacha v. Sec. of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("[A]n ALJ may consider household and social activities in evaluating complaints of disabling pain."). The ALJ here properly considered whether the daily activities described were

20

consistent with the symptoms plaintiff alleged and found her activities were not consistent with the limited lifting ability she asserted. In making this finding, the ALJ did not improperly equate plaintiff's ability to perform limited daily activities with an ability to perform substantial gainful activity.

Plaintiff alleges that the ALJ nonetheless erred by failing to credit her testimony regarding the side effects of her medication. (Doc. 13 at 17-18). Plaintiff gave vague testimony at the ALJ hearing that she had "gotten an opinion from [her] doctors" that "most of" the problems she testified about – joint pain, confusion, memory problems, tiredness, and blurred vision – were "from my medications." (Tr. 82-83). However, plaintiff does not point to any medical evidence that supports her testimony that her medications cause these symptoms or to show that these side effects impose limitations that are not accounted for in the RFC finding. The ALJ did not err by failing to fully credit plaintiff's testimony that it was her doctor's opinion that "most" of her symptoms were caused by her medications absent corroborating evidence.

Plaintiff further alleges that the ALJ erred by failing to factor her "excellent" work history into his credibility determination. (Doc. 13 at 8). However, the ALJ's decision directly refutes plaintiff's allegation. The ALJ considered plaintiff's "good work history" and found that it tended to weigh in her favor. (Tr. 22). The ALJ nonetheless determined that evidence on other factors bearing on plaintiff's credibility outweighed this favorable consideration for reasons the ALJ thoroughly discussed.

The ALJ properly applied the two-part *Duncan* standard in evaluating plaintiff's subjective complaints of pain and other purportedly disabling symptoms. The ALJ conducted a

thorough evaluation of plaintiff's complaints in light of the objective medical evidence of record, her reported daily activities, and other pertinent factors. The ALJ reasonably relied on a lack of supporting objective findings, inconsistencies between plaintiff's testimony and the medical records, and plaintiff's activities of daily living in finding that plaintiff's allegations of disabling physical and mental limitations were not fully credible. Although plaintiff has pointed to medical evidence showing she suffers from several severe impairments and resulting limitations, the ALJ did not err by resolving inconsistencies in the evidence in plaintiff's favor. *Solembrino v. Astrue*, No. 1:10-cv-01017, 2011 WL 2115872, at *8 (N.D. Ohio May 27, 2011) (an ALJ "does not 'cherry pick' the evidence merely by resolving some inconsistencies unfavorably to a claimant's position."). The ALJ performed a sufficient analysis to show he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence."). The ALJ's credibility determination is substantially supported and should not be disturbed by this Court, even if the evidence could support another outcome. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983); *Her v. Commr. of Soc. Sec.*, 203 F.3d 389-90 (6th Cir. 1999).

Plaintiff's first, second, third and sixth assignments of error should be overruled.

## III. Conclusion

Substantial evidence supports the ALJ's decision that the record does not disclose new and material evidence or changed circumstances pertaining to plaintiff's mental RFC since July 26, 2011, the date of the prior ALJ decision. Substantial evidence also supports the ALJ's

22

decision that while the change in plaintiff's physical status resulted in the need to limit her exposure to pulmonary irritants in the RFC finding to account for plaintiff's recent diagnosis of early emphysema, her limitations do not preclude the performance of substantial gainful activity. Therefore, the decision of the ALJ should be affirmed.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: _2/9/18_

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KATHLEEN M. BROWN,
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:17-cv-151
Barrett, J.
Litkovitz, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).